# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| *In Re:* | CASE NO: 23-10298-JPS |
| BRITTANY HINTON, | CHAPTER 7 |
| Debtor. | JUDGE: JESSICA E. PRICE SMITH |
| KAI LaSHAWN | ADVERSARY NO: |
| Plaintiff, | |
| vs. | **COMPLAINT TO DETERMINE DISCHARGE EXEMPTION FOR DEBTS PURSUANT TO 11 U.S.C. § 523(a)(6)** |
| BRITTANY HINTON, | |
| Defendant. | |

## COMPLAINT

Plaintiff Kai LaShawn ("Plaintiff"), through undersigned counsel, files this Complaint against Defendant Brittany Hinton ("Defendant") pursuant to 11 U.S.C. § 523(a)(6), and allege the following in support of the requested relief:

## JURISDICTION

1. This is an adversary proceeding in which the Plaintiff is seeking a discharge exemption pursuant to 11 U.S.C. § 523(a)(6).

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

1

4. Plaintiff has standing to bring this action pursuant to 11 U.S.C. § 523(a)(6).

5. Venue is proper pursuant to 28 U.S.C. § 1409 and Local Rule 1071-1 of the United States Bankruptcy Court for the Northern District of Ohio.

## BACKGROUND FACTS

6. At all relevant times hereto, the Defendant-Debtor was the owner of the house located at 27505 Forestview Avenue, Euclid, Ohio 44132 (the "House").

7. The Plaintiff had moved back to Ohio and was staying at the House temporarily, which is situated in Cuyahoga County.

8. This matter is insured pursuant to a homeowner's liability policy covering the House.

9. On January 26, 2021, Plaintiff arrived back at the House after leaving earlier.

10. When Plaintiff arrived back at the House, another vehicle was parked in the driveway where Plaintiff normally parked.

11. The vehicle belonged to the Defendant's aunt.

12. The Plaintiff knew that she was not going to be leaving the House that night and did not want to park behind the aunt's car if the aunt was going to be leaving later that night.

13. The Plaintiff spoke with the Defendant about this concern and the Defendant assured her that it was okay to park behind her aunt's car because her aunt was not going to leave.

14. At approximately 10:00pm on January 26, 2021, the Plaintiff was awoken by the Defendant.

15. The Defendant instructed the Plaintiff to hurry and move her vehicle from the driveway because her aunt needed to leave.
16. There was snow on the ground when the Plaintiff exited the front door of the House, so she grabbed the porch handrail for support before she took her first step out of the front door onto the elevated front porch.
17. There was a large crack in the concrete front porch, right where the base of the porch handrail inserts into the porch.
18. Based on the location and size of the crack, the Defendant knew of it and intentionally failed to correct it and warn Plaintiff of it.
19. Because of the crack, the handrail was not firmly fastened and gave way, causing the Plaintiff to fall.
20. The unexpected and severe impact from the fall left the Plaintiff unable to walk due to excruciating pain in her right ankle and left knee.
21. The Plaintiff crawled back inside the House and iced the injured areas in the hopes that the pain would subside.
22. The following morning, January 27, 2021, the Plaintiff was still in severe pain, and she was taken the hospital.
23. X-rays taken at the hospital revealed that the Plaintiff had suffered multiple fractures in her ankle and leg from the fall at the House.
24. The Plaintiff was lawfully at the House.
25. The Defendant intentionally permitted unreasonably dangerous conditions to exist at the House and failed to warn Plaintiff or correct the conditions.

26. The Defendant had a duty to but failed to give notice of the dangerous conditions to Plaintiff.

27. The Defendant knew of the defects on the property but intentionally failed to correct them or warn Plaintiff.

28. As a direct and proximate result of Defendant's willful misconduct and malice toward the Plaintiff, Plaintiff sustained injuries of the body and mind, including but not limited to a broken right fibula and breaks in the ankle and foot. Said injuries caused and will continue to cause pain, suffering, and emotional distress.

29. As a direct and proximate result of the Defendant's willfulness in maintaining the premises and allowing dangerous conditions to exist without warning, the Plaintiff lost her ability to perform her normal daily functions.

30. As a direct and proximate result of Defendant's willfulness, Plaintiff is or may be permanently disabled.

31. As a direct and proximate result of Defendant's willfulness, Plaintiff has and will continue to incur hospital and medical expenses.

32. As a direct and proximate result of Defendant's willfulness, Plaintiff suffered and will continue to suffer a loss of wages and business opportunities.

33. The handrail was in violation of City of Euclid Ordinance 1755.21(d), which states that "[e]very handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition."

34. The Ordinance imposed a legal duty on the Defendant.

35. The porch handrail was not firmly fastened and that caused the Plaintiff to fall and suffer injuries.

36. The Ordinance exists to prevent the harm that Plaintiff suffered.

37. The Plaintiff had a right to rely on the handrail for support upon intending egress from the House.

38. But for the Defendant's intentional breach of legal duty and failure to follow the Ordinance, the Plaintiff would not have been injured.

39. As a direct and proximate result of Defendant's failure to comply with the Ordinance, the Plaintiff sustained injuries of the body and mind, including but not limited to injuries to the back and wrists. Said injuries caused and will continue to cause pain, suffering, and emotional distress.

40. As a direct and proximate result of Defendant's intentional failure to comply with the Ordinance, the Plaintiff lost her ability to perform her normal daily functions.

41. As a direct and proximate result of Defendant's failure to comply with the Ordinance, the Plaintiff is or may be permanently disabled.

42. As a direct and proximate result of Defendant's failure to comply with the Ordinance, the Plaintiff has and will continue to incur hospital and medical expenses.

43. As a direct and proximate result of Defendant's failure to comply with the Ordinance, the Plaintiff suffered and will continue to suffer a loss of wages and business opportunities.

## **COUNT ONE**

## DEFENDANT'S DEBT IS NONDISCHARGEABLE UNDER 11 U.S.C. § 523(a)(6)

44. Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 43.

45. Section 523(a)(6) prevents the discharge of debts that arose from "willful and malicious" conduct.

46. The facts of the case show that the Defendant injured the Plaintiff in a "willful and malicious" matter, making it exempt from discharge

47. The Defendant's debts to the Plaintiff are exempt from discharge in a Chapter 7 bankruptcy pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, the Plaintiff Kai LaShawn respectfully requests that the Court exempt the Defendant's debts from discharge pursuant to 11 U.S.C. § 523(a)(6), award attorney fees, and for such other and further relief the Court deems appropriate.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury as to all issues raised by each count of the Complaint.

Respectfully submitted,

/s/ Kevin M. Gross
Lewis A. Zipkin, Esq. (0030688)
Kevin M. Gross, Esq. (0097343)
ZIPKIN WHITING CO., LPA
Zipkin Whiting Building
3637 South Green Road
Beachwood, Ohio 44122
Telephone: (216) 514-6400
Email: kgross.zipkinwhiting@gmail.com
zfwlpa@aol.com